# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
### HARTFORD DIVISION

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 18-21217 (JJT) |
| | ) | | |
| HAMPTON VENTURES, LLC, | ) | CHAPTER | 7 |
| DEBTOR. | ) | | |
| | ) | RE: ECF NO. | 87 |
| LUCILLE ST. GEORGE, | ) | | |
| PLAINTIFF | ) | ADV. PRO. NO. | 18-02903 (JJT) |
| V. | ) | | |
| | ) | RE: ECF NOS. | 14, 28 |
| HAMPTON VENTURES, LLC and | ) | | |
| ANTHONY NOVAK, | ) | | |
| CHAPTER 7 TRUSTEE | ) | | |
| DEFENDANTS. | ) | | |
| | ) | | |

## **APPEARANCES**

Michael P. Berman, Esq.                                    Attorney for the Plaintiff, Lucille St. George
Berman & Sable LLC
100 Pearl Street, 4th Floor West
Hartford, CT 06103

Patrick Tomasiewicz, Esq.                                Attorney for the Plaintiff, Lucille St. George
Fazzano & Tomasiewicz, LLC
96 Oak Street
Hartford, CT 06106

David M.S. Shaiken, Esq.                                 Attorney for the Defendant, Anthony S. Novak
Shipman, Shaiken & Schwefel, LLC
433 South Main Street, Suite 319
West Hartford, CT 06110

Anthony S. Novak, Esq.                                                              Chapter 7 Trustee
Novak Law Office, P.C.
280 Adams Street
Manchester, CT 06042

## MEMORANDUM OF DECISION AFTER TRIAL OF ADVERSARY PROCEEDING AND RULING ON OBJECTION TO PROOF OF CLAIM 6-1

I.    INTRODUCTION

In 2004, the plaintiff, Lucille St. George ("Ms. St. George" or "Plaintiff"), and William

Nappo ("Mr. Nappo") were divorced. Since then, the parties have been involved in interminable

litigation in a variety of cases both here and in the Connecticut Superior Court. After the

marriage, in 2005, Mr. Nappo's corporation, R.E.T. Capital Corporation ("RET"), prevailed in

an *ad valorem* suit in New York and received, after fees and expenses, approximately

$225,000.00. Mr. Nappo directed that money to be paid in a loan to the debtor, Hampton

Ventures, LLC ("Debtor"), a single-member limited liability company owned by Karen Nappo

("Ms. Nappo"), Mr. Nappo's current wife. In return, the Debtor gave RET a promissory note for

$225,000.00 ("Note"). The Debtor used that money in 2005, along with other financing, to

purchase a commercial building located at 1098-1110 New Britain Avenue, West Hartford, CT

("Property") for $650,000.00.

Upon learning of the *ad valorem* suit from a 2013 deposition of Mr. Nappo, the Plaintiff

filed suit in the Connecticut Superior Court, claiming, *inter alia*, a constructive trust over the

Debtor.[1] When the Debtor subsequently filed for protection under Chapter 7 of the Bankruptcy

Code in 2018, the Plaintiff filed the present adversary proceeding ("Adversary Proceeding") in

this Court against the Debtor and the Chapter 7 Trustee, Anthony S. Novak ("Trustee,"

collectively "Defendants"), claiming a constructive trust over the Debtor's main asset, the

Property.

---

[1] Superior Court, Judicial District of Hartford, Docket No. CV-14-6050185-S. *See* part III.E of this Memorandum.

Additionally, the Plaintiff filed a proof of claim ("Claim 6-1") in the amount of $1,582,517.00 on the basis of her constructive trust claim, which amount was meant to encapsulate an attributed value of the Property ($774,900.00) and estimated rents received by the Debtor from May 4, 2005 to August 9, 2018.[2] The Trustee objected to Claim 6-1 ("Objection"), arguing that the Plaintiff has no right to a constructive trust under applicable law. The Trustee also requested that the Adversary Proceeding and the proceedings on the Objection be consolidated for trial. The Court, with the consent of the parties, has done so and conducted a consolidated trial of these matters on March 4, 5, and 6, 2019.

After reviewing the law and the evidence, the Court finds that the Plaintiff has failed to meet her burden to warrant the imposition of a constructive trust on the Property. On that basis, the Court also sustains the Objection and, accordingly, disallows Claim 6-1.

II.    JURISDICTION

The Court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334(b) and derives its authority to hear and determine these matters on reference from the District Court pursuant to 28 U.S.C. §§ 157(a) and (b)(1). The Objection is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

The Court, pursuant to 28 U.S.C. § 157(b)(3), has previously determined that the Adversary Proceeding before the Court is a core proceeding. *See* 28 U.S.C. §§ 157(b)(2)(A), (E), and (O). Even if the Adversary Proceeding concerns a "*Stern* claim," *see generally Stern v. Marshall*, 564 U.S. 462 (2011), or is a noncore "related to" matter, *see* 28 U.S.C. § 157(a), the Plaintiff has expressly consented to this Court's entry of final judgment in this matter. *See* 28 U.S.C. § 157(c)(2).

---

[2] Claim 6-1's estimates of rents received listed only rents from 2010–2013 and 2016–2018.

III.    UNDISPUTED FACTS[3] AND PROCEDURAL HISTORY

The Court notes the following undisputed facts and procedural history of these matters and the related cases:

A.    The Debtor and the Property

1.    The Debtor is a limited liability company organized under the laws of Connecticut.

2.    Ms. Nappo is the sole member and owner of the Debtor.

3.    Ms. Nappo is the current wife of Mr. Nappo.

4.    On May 4, 2005, the Debtor purchased the Property for $650,000.00.

5.    The Debtor paid the purchase price through two mortgages totaling $400,000.00, with the remainder paid through $225,000.00 obtained from RET as a loan and $25,000.00 in undisclosed funds.

6.    Mr. Nappo is the sole owner of RET.

7.    RET was administratively dissolved by the State of New York in 2002 but remains in wind-down.

8.    RET received the $225,000.00 through the successful prosecution of an *ad valorem* suit in New York. After receiving the funds, Mr. Nappo directed that they be loaned to the Debtor.

9.    In return for the $225,000.00, Ms. Nappo, on behalf of the Debtor, executed the Note payable to RET. The Note was payable in 2015 at 1.5% interest per annum, with the maturity date extendable by five years to 2020 by mutual consent, which was exercised.

---

[3] The Court is sensitive to the fact that the only parties to this case are the Plaintiff and the Defendants. Mr. Nappo, Ms. Nappo, RET, and Jen-Dale are not parties to this action. Due to pending litigation amongst some or all of the aforementioned parties, which is currently stayed, the Court does not wish to prejudice the parties and nonparties by making factual findings unnecessary to the resolution of these matters. Accordingly, the Court will note any additional findings of fact as necessary in part IV of this Memorandum.

10.    The Debtor never granted RET a mortgage over the Property.

11.    The Debtor subsequently refinanced and consolidated the first two mortgages with

Webster Bank, N.A., which currently holds the mortgage lien on the Property.

B.    The Bankruptcy Case: *In re Hampton Ventures, LLC*

1.    The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on July 27,

2018 (MC ECF No. 1).[4]

2.    After John J. O'Neil, Jr. resigned as trustee, Bonnie C. Mangan was appointed as

successor trustee on August 6, 2018 (MC ECF No. 8).

3.    In the schedules it filed, the Debtor listed assets of $778,870.60, with $760,500.00 of that

amount attributed to the Property (MC ECF No. 11).

4.    Bonnie C. Mangan subsequently resigned as trustee, and was replaced by the Trustee,

Anthony S. Novak, on August 27, 2018 (MC ECF No. 25).

5.    The Trustee then sought to sell the Property on September 20, 2018 and applied to

employ a real estate broker to do so (MC ECF No. 36), which the Court approved without

prejudice to the Plaintiff's claims (MC ECF No. 47).

6.    On October 5, 2018, the Plaintiff filed Claim 6-1", in the amount of $1,582,527.00,

which amount included the value of the Property and the rents derived from it.

7.    The Plaintiff then initiated the Adversary Proceeding on November 16, 2018 against the

Debtor, claiming a constructive trust over the Property (MC ECF No. 49). The Plaintiff

filed her amended complaint on December 21, 2018 to add the Trustee as a defendant

(AP ECF No. 14).

---

[4] Because this Memorandum concerns both the disposition of the Adversary Proceeding and the Objection in the main case, it is necessary to cite to documents in both dockets. In doing so, the Court will use "MC" to indicate that a document is to be found in the main case docket and "AP" to indicate that document is to be found in the Adversary Proceeding docket.

8. The Trustee initially moved to sell the Property free and clear of liens and interests for $625,000.00 to Draymore and Flynn Properties, LLC ("Motion to Sell," MC ECF No. 60). The Trustee subsequently noticed a higher and better offer of $725,000.00 from Juniper Home Care, LLC (MC ECF No. 81), which is the offer currently pending in the Motion to Sell and proposed Notice of Sale (MC ECF No. 62).

9. The Trustee filed the Objection to Claim 6-1 on February 4, 2019 (MC ECF No. 87), claiming, *inter alia*, that the claim should be disallowed because the Plaintiff is not entitled to a constructive trust on the Property under applicable law.

10. The Court held hearings on the Trustee's Motion to Sell to Juniper Home Care, LLC for $725,000.00 on February 7, 13, and 26 and March 1 and 6, 2019.

11. On February 11, 2019, the Court ordered the Trustee and the Plaintiff to consider and brief whether the pending Adversary Proceeding needed to be decided before the Property could be sold (MC ECF No. 109). After receiving briefing from the parties, the Court determined it must decide this Adversary Proceeding to determine whether the Property was property of the estate or belonged to the Plaintiff before the Court could authorize a sale (MC ECF No. 121).

12. The Court consolidated the trial on the Adversary Proceeding and the Objection and received evidence on March 4, 5, and 6, 2019. The testimony taken from the hearings held on the Motion to Sell was incorporated into the record of the Objection and Adversary Proceedings and vice versa, by agreement of the parties.

13. The Court has substantially contemporaneously with this Memorandum issued a Ruling and Order approving the Trustee's Motion to Sell.

C.    The Divorce Case: *Nappo v. Nappo*[5]

1.    The Plaintiff and Mr. Nappo were divorced on May 6, 2004.

2.    The docket reflects near-constant litigation in the intervening years.

3.    In connection with proceedings before the Superior Court, the Plaintiff and Mr. Nappo submitted financial affidavits, both before and after the divorce was finalized.

4.    Although Mr. Nappo listed his 100% ownership of RET on his financial affidavits, he initially listed the value as $0. That valuation reflected RET's patent insolvency, attributable in large part to a multimillion-dollar environmental clean-up claim pertaining to its oil and gas operations at Mott Basin in New York.

5.    Mr. Nappo initially did not disclose the *ad valorem* suit (which was pending at the time of the divorce), the receipt of a net litigation recovery from it in 2005, the transfer of the proceeds to the Debtor, or the Note on his financial affidavits.

6.    During a deposition in 2013, for the first time, Mr. Nappo revealed the existence of the *ad valorem* suit, the proceeds from it, and the loan of the proceeds to the Debtor.

7.    The Note and its face value of $225,000.00 is listed on Mr. Nappo's financial affidavits as RET's asset from September 5, 2014 onward.

8.    The divorce decree ordered the Plaintiff and Mr. Nappo to report any change in income to the other within two weeks.

9.    The divorce decree also ordered that all of Mr. Nappo's business interests, including RET, would remain his. The decree allocated to the Plaintiff: survivor benefits from Mr. Nappo's pension, alimony, half the proceeds of a bond, three real properties, cash, two cars, any inheritance she might receive, and the proceeds of a Merrill Lynch account.

---

[5] Superior Court, Judicial District of Hartford, Docket No. FA-02-0729285-S. The Court took judicial notice of all three Superior Court dockets and entries and rulings cited therein.

10.    In a June 15, 2017 memorandum of decision on various post-judgment motions, the Superior Court found that the second Ms. Nappo was "now provid[ing] the bulk of [Mr. Nappo's] support." The Superior Court also found that Mr. Nappo frequently deposited funds into his bank account that he received from Ms. Nappo and "that the amounts of these deposits . . . are typical of the continuing financial support provided [Mr. Nappo] by [Ms. Nappo]." The Superior Court determined that these funds constituted income for alimony purposes because they were gifts. Finally, the Superior Court determined that funds Mr. Nappo received from Ms. Nappo that she, in turn, derived from the Property "are properly taken into account in determining his income."

D.    The Jen-Dale Constructive Trust Case: *RET Capital Corp. et al. v. Jen-Dale, LLC et al.*[6]

1.    On May 12, 2011, RET and Mr. Nappo filed suit against Jen-Dale, L.L.C. ("Jen-Dale") and Jennifer Merritt, its 99% owner. Ms. St. George owned the other 1% of Jen-Dale.

2.    Jennifer Merritt is Ms. St. George's and Mr. Nappo's daughter.

3.    Jen-Dale had executed a promissory note to RET in the amount of $500,000.00 with 9% interest per annum in 1997, which Jen-Dale and Jennifer Merritt did not pay.

4.    On September 2, 2014, the Superior Court found for the plaintiffs in that case. The Superior Court ordered the imposition of a constructive trust and resulting trust, such that ownership in Jen-Dale was changed from 99% ownership by Jennifer Merritt and 1% ownership by Ms. St. George to Ms. St. George and Mr. Nappo each having a 50% interest. The court reasoned that such was warranted because interest on the note was meant to provide for Ms. St. George and Mr. Nappo in their retirement. The court also

---

[6] Superior Court, Judicial District of Hartford, Docket No. CV-11-6021668-S.

ordered the Plaintiff and Mr. Nappo to share income from Jen-Dale equally, with their grandchildren receiving the remainder upon the death of each.

5.     The docket reflects dozens of entries revealing continued disputes after entry of judgment.

6.     Ultimately, Jen-Dale's property in Avon was sold in 2016 in foreclosure; Jen-Dale received $88,750.98 from the sale.

7.     Much, if not all, of the $88,750.98 has been allegedly wrongfully disbursed by Mr. Nappo, who claims offset rights for legal expenses.

8.     The Jen-Dale LLC Irrevocable Trust, Jen-Dale's successor, remains in possession of a promissory note dated May 31, 2016 from RET, wherein RET promises to pay $60,000.00 to the Jen-Dale LLC Irrevocable Trust in 2021 with interest at 3% per annum. That note is subject to possible extension to 2026.

    E.     The State Court Hampton Ventures Constructive Trust Case: *St. George et al. v. Hampton Ventures, LLC et al.*[7]

1.     The Plaintiff and Jeffrey Nappo[8] filed suit against the Debtor, Mr. Nappo, and Ms. Nappo in Superior Court on April 10, 2014.

2.     In the amended complaint filed January 8, 2018, the Plaintiff seeks constructive trusts over half or all of the Debtor, the Note, and the rental income of the Property. She also claims fraud, unjust enrichment, civil conspiracy, negligent infliction of emotional distress, intentional infliction of emotional distress, fraudulent conveyance, theft, conversion, and breach of fiduciary duty.[9]

---

[7] Superior Court, Judicial District of Hartford, Docket No. CV-14-6050185-S.

[8] As he has here, Jeffrey Nappo is operating under a power of attorney from the Plaintiff, who is his mother.

[9] Although premised on the exact same facts, the claims made and remedies sought in the state court constructive trust case are different from what is sought here. Namely, here, the constructive trust in the Adversary

3.      On July 3, 2018, the Superior Court ordered that "[a]ll discovery [is] to be completed by August 2, 2018. No exceptions will be entertained by the court."

4.      The case has been stayed as to the Debtor since August 8, 2018 by virtue of the automatic stay.

5.      The Chapter 7 bankruptcy case was filed on the eve of jury selection in the Superior Court case.

6.      In lieu of stay relief, the Court and the parties have proceeded with an expedited trial of the Adversary Proceeding, so that the Plaintiff's claimed interest in the Property might be determined before any disposition on the Trustee's Motion to Sell.

## IV.   CONCLUSIONS OF LAW

### A.   Applicable Law

#### 1.   <u>Constructive Trusts</u>

"The existence and nature of a debtor's interest, and correspondingly the estate's interest, in property is determined by state law. . . . One must look to state law, therefore, to determine whether to impose a constructive trust on property within the debtor's possession. . . . As a general rule, the law of the situs of the property, and therefore the trust, governs this determination." *Sanyo Elec., Inc. v. Howard's Appliance Corp. (In re Howard's Appliance*

---

Proceeding complaint is sought only on the Property, which is claimed nowhere in the operative complaint in the state court constructive trust case.

    The Court must also observe another major difference between the state court constructive trust proceeding and the Adversary Proceeding: the relevance of Jen-Dale. The amended complaint filed in the state court proceeding is rife with references to the circumstances surrounding Jen-Dale and the alleged inequities derived from it. Nowhere—and the Court means nowhere—is Jen-Dale mentioned in the amended complaint of the Adversary Proceeding. And yet, much of the Plaintiff's case was made on the inequities that she has suffered due to Mr. Nappo's alleged usurpation of funds from the Jen-Dale. Aside from the tangential relationship Mr. Nappo had with Jen-Dale and the Debtor—and that is the most the Plaintiff has proven in this case—the Court cannot stress enough how irrelevant Jen-Dale is to the Adversary Proceeding and the Objection. What happened with Jen-Dale, to put it bluntly, while it may be demonstrable of Mr. Nappo's character, has nothing to do with whether a constructive trust should be imposed on the Property. Such was not pleaded, and the Court will not mention it further.

*Corp.)*, 874 F.2d 88, 93–94 (2d Cir. 1989) (citations omitted); *see also Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450–51 (2007). Because the Property is in Connecticut, there is no dispute that Connecticut law applies.

"A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. . . . The imposition of a constructive trust by equity is a remedial device designed to prevent unjust enrichment. . . . Thus, a constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. . . . A claimant entitled to restitution from property may obtain restitution from any traceable product of that property, without regard to subsequent changes of form. . . . A claimant seeking a constructive trust must identify property in the hands of the [defendant] that represents or embodies . . . property obtained at the claimant's expense or in violation of the claimant's rights." *Town of New Hartford v. Conn. Res. Recovery Auth.*, 291 Conn. 433, 466, 970 A.2d 592 (2009) (citations and internal quotation marks omitted).

"[A] constructive trust arises contrary to intention and *in invitum*, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. . . . Moreover, the party sought to be held liable for a constructive trust must have engaged in conduct that wrongfully harmed the plaintiff." *Wendell Corp. Tr. v. Thurston*, 239 Conn. 109, 113–14, 680 A.2d 1314 (1996) (citations and internal quotation marks omitted).

11

"A [c]onstructive trust permits the claimant to assert ownership of (i) specifically identifiable property for which the defendant is liable in restitution or (ii) its traceable product . . . . A claimant who can show unjust enrichment, but who cannot identify such property in the hands of the defendant, is not entitled to the remedy of constructive trust." *Wall Sys., Inc. v. Pompa*, 324 Conn. 718, 742, 154 A.3d 989 (2017) (citations and internal quotation marks omitted). "[I]t is unnecessary to find fraudulent intent for the imposition of a constructive trust. Whether there be fraud at the inception or a repudiation afterward, the whole significance of such cases lies in the unjust enrichment of the grantee through his unconscionable retention of the trust res." *Hieble v. Hieble*, 164 Conn. 56, 63, 316 A.2d 777 (1972) (citations omitted). "The issue raised by a claim for a constructive trust is, in essence, whether a party has committed actual or constructive fraud or whether he or she has been unjustly enriched."[10] *Cadle Co. v. Gabel*, 69 Conn. App. 279, 295, 794 A.2d 1029 (2002) (citation omitted).

Although Connecticut law is unclear on the standard of proof in order to impose a constructive trust for unjust enrichment, *see Cadle Co. v. Jones*, 2004 WL 2049321, at *9–10 (D. Conn. Aug. 20, 2004), such burden seems to be preponderance of the evidence. *See id.*; *see also Cohen v. Cohen*, 182 Conn. 193, 200, 438 A.2d 55 (1980).

---

[10] Through much of the Adversary Proceeding, the Plaintiff has been represented by two attorneys, Patrick Tomasiewicz and Michael Berman. Attorney Berman has stated both on the record and has admitted in a brief on the appropriate standard of proof (AP ECF No. 62) that the Plaintiff's amended complaint in this Adversary Proceeding does *not* allege fraud, only unjust enrichment; however, Attorney Tomasiewicz has framed his theory of the case around Mr. Nappo's failure to disclose the *ad valorem* suit, its proceeds, and the Note. That alleged failure to disclose is a form of fraud, whether actual or constructive. Thus, it seems Attorneys Berman and Tomasiewicz have ostensibly contradicted one another in terms of the appropriate legal theory underlying this case; in any regard, the operative complaint in this Adversary Proceeding, which is not a model of clarity, makes both allegations of nondisclosure and unjust enrichment. Rather than prejudice the Plaintiff by these differing views of the theory of this case, the Court addresses both fraud and unjust enrichment, neither of which the Court finds.

a.    Actual Fraud

"The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to [her] detriment. . . . Fraud by nondisclosure, which expands on the first three of [the] four elements [of fraud], involves the failure to make a full and fair disclosure of known facts connected with a matter about which a party has assumed to speak, under circumstances in which there is a duty to speak. . . . A lack of full and fair disclosure of such facts must be accompanied by an intent or expectation that the other party will make or will continue in a mistake, in order to induce that other party to act to her detriment. . . . In a marital dissolution case, the requirement of a duty to speak is imposed by [the] Practice Book . . ., requiring the exchange and filing of financial affidavits . . . and by the nature of the marital relationship." *Reville v. Reville*, 312 Conn. 428, 441, 93 A.3d 1076 (2014) (citations and internal quotation marks omitted). A party asserting fraud must do so by clear and convincing evidence.[11] *Stuart v. Freiberg*, 316 Conn. 809, 821, 116 A.3d 1195 (2015).

b.    Constructive Fraud

Unlike the Bankruptcy Code and the Uniform Fraudulent Transfer Act, constructive fraud in the context of a constructive trust is difficult to catalogue, *see Worobey v. Sibieth*, 136 Conn. 352, 356, 71 A.2d 80 (1949), but can generally manifest itself in two ways: (1) by replacing the second element of actual fraud with an untrue statement made recklessly, *see Nanos v. Harrison*,

---

[11] Although the Court believes the proper standard of proof in these matters is clear and convincing evidence because the underlying conduct alleged is fraud, the Court recognizes that the parties—and, frankly, the Plaintiff's attorneys—are not on the same page. *See* note 10 of this Memorandum. As noted above, there is some ambiguity as to whether constructive trusts generally require clear and convincing evidence or a preponderance of the evidence when premised on unjust enrichment. The Court finds no need to resolve this tension because the Plaintiff has failed to prove her case by even a preponderance of the evidence, which the Court will apply to all findings for the sake of expediency.

97 Conn. 529, 532, 117 A. 803 (1922), or (2) as a breach of a confidential relationship or fiduciary duty. *See generally Worobey*, 136 Conn. 352.

"It is a thoroughly well-settled equitable rule that any one acting in a fiduciary relation shall not be permitted to make use of that relation to benefit his own personal interest. This rule is strict in its requirements and in its operation. It extends to all transactions where the individual's personal interests may be brought into conflict with his acts in the fiduciary capacity, and it works independently of the question whether there was fraud or whether there was good intention. Where the possibility of such a conflict exists there is the danger intended to be guarded against by the absoluteness of the rule. The underlying thought is that an agent or other fiduciary should not unite his personal and his representative characters in the same transaction; and equity will not permit him to be exposed to the temptation, or be brought into a situation where his own personal interests conflict with the interests of his principal and with the duties he owes to his principal." *Chioffi v. Martin*, 181 Conn. App. 111, 136–37, 186 A.3d 15 (2018) (citing *Mallory v. Mallory Wheeler Co.*, 61 Conn. 131, 137–38, 23 A. 708 (1891)) (citation, emphasis, and internal quotation marks omitted).

"Ordinarily and presumptively, a confidential relation or a relationship of special confidence exists between husband and wife. It includes, but is not limited to, a fiduciary duty between the spouses, of the highest degree." *Bedrick v. Bedrick*, 300 Conn. 691, 702, 17 A.3d 17 (2011) (citation and internal quotation marks omitted). "Although marital parties are not necessarily in the relationship of fiduciary to beneficiary, [the Connecticut Supreme Court] believe[s] that no less disclosure is required of such parties when they come to court seeking to terminate their marriage." *Billington v. Billington*, 220 Conn. 212, 221, 595 A.2d 1377 (1991). "[I]n the absence of additional facts from which a fiduciary relationship reasonably may be

14

inferred, an action brought against a spouse is not the legal equivalent of an action brought against a fiduciary." *Reinke v. Sing*, 186 Conn. App. 665, 681 (2018) (citation omitted). Connecticut "case law reflects that parties in a dissolution action are [u]nlike civil litigants who stand at arm's length from one another . . . . For this reason, and because parties in a dissolution action need information about each other's income and assets to pursue their cause of action, [Connecticut] case law imposes a duty on parties in a dissolution action to fully and frankly disclose their financial information. [Connecticut] decisional law, however, has limited this fiduciary-like duty to disclosure and, in light of that disclosure obligation, to proving the absence of harm once proper disclosure has not occurred[.]" *Id.* at 682 (citation and internal quotation marks omitted).

      c.    <u>Unjust Enrichment</u>

"A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Unjust enrichment is, consistent with the principles of equity, a broad and flexible remedy. . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Town of New Hartford*, 291 Conn. at 451–52 (citation and internal quotation marks omitted).

"This doctrine is based upon the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property received, retained or appropriated. . . . The question is: Did [the party liable], to the detriment of someone else, obtain something of value to which [the party liable] was not entitled?" *Id.* at 452 (citation and internal quotation marks omitted).

"Although unjust enrichment typically arises from a plaintiff's direct transfer of benefits to a defendant, it also may be indirect, involving, for example, a transfer of a benefit from a third party to a defendant when the plaintiff has a superior equitable entitlement to that benefit. . . . If a payment to [a] defendant is an asset to which the claimant (as against defendant) has the paramount entitlement, the law of restitution and unjust enrichment supplies a claim to recover the amount in dispute." *Id.* at 468 (citations and internal quotation marks omitted).

2.    Objections to Claims

A properly filed proof of claim is prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). Unless a party in interest objects, it is deemed allowed. 11 U.S.C. § 502(a). An objection must be lodged in accordance with Fed. R. Bank. P. 3007. The objecting party must "produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Driscoll*, 379 B.R. 415, 420 (Bankr. D. Conn. 2008) (citations omitted). "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant." *In re Vanegas*, 290 B.R. 190, 193 (Bankr. D. Conn. 2003) (citations omitted).

Claims may be disallowed if "such claim is unenforceable against the debtor and property of the debtor, under any . . . applicable law[.]" 11 U.S.C. § 502(b)(1). "To determine whether a claim is allowable by law, bankruptcy courts look to applicable nonbankruptcy law." *In re Residential Cap., LLC*, 513 B.R. 446, 458 (Bankr. S.D.N.Y. 2014) (citation and internal quotation marks omitted).

B.  A Constructive Trust Is Not Warranted under the Facts of this Case

1.  The Debtor Did Not Commit Fraud Because William Nappo Had No Duty to Disclose the *Ad Valorem* Suit or the Proceeds from It

The Plaintiff claims that Mr. Nappo had a duty to disclose the *ad valorem* suit and its proceeds under both Connecticut law and the terms of the divorce decree. The Court disagrees.

a.  Mr. Nappo Had No Duty to Disclose the Suit under Connecticut Law

The Plaintiff argues that, under Connecticut law, Mr. Nappo had a duty of "full and frank disclosure" in the divorce proceedings, which included a duty to disclose RET's *ad valorem* suit and the proceeds from it. The Trustee contends that Mr. Nappo made a full and frank disclosure because he disclosed his 100% ownership of RET and properly valued it at $0 during the divorce proceedings RET was indisputably insolvent at the time. The Court agrees with the Trustee.

The Plaintiff has cited to several Connecticut appellate court cases[12] (AP ECF No. 61), which invariably impose a general duty of full and frank disclosure on divorcing parties. Indeed, in *Billington*, the Connecticut Supreme Court said: "Our cases have uniformly emphasized the need for full and frank disclosure in that affidavit. A court is entitled to rely upon the truth and

---

[12] *Reville, supra*; *Ramin v. Ramin*, 281 Conn. 324, 915 A.2d 790 (2007); *Weinstein v. Weinstein*, 275 Conn. 671, 882 A.2d 53 (2005); *Billington, supra*; *Baker v. Baker*, 187 Conn. 315, 445 A.2d 912 (1982); *Monroe v. Monroe*, 177 Conn. 173, 413 A.2d 819 (1979); *Reinke, supra*; *Jackson v. Jackson*, 2 Conn. App. 179, 478 A.2d 1026 (1984). Some of these cases concern a party's relationship with her lawyer, not the opposing party in the divorce, and are, frankly, irrelevant.

accuracy of sworn statements required by . . . the Practice Book, and a misrepresentation of assets and income is a serious and intolerable dereliction on the part of the affiant which goes to the very heart of the judicial proceeding." 220 Conn. at 219–20 (citations and internal quotation marks omitted). *None* of the cases cited states a rule that a party to a divorce proceeding needs to disclose corporate ownership beyond the shares of the company owned and the value of those shares. The Plaintiff has cited to no case—and the Court has found none—that states such a party needs to disclose a full listing of assets and liabilities of a company owned, including potential and pending causes of action or efforts to contest liabilities. Such a rule would be patently unworkable, as a larger corporation might have hundreds or thousands of such contingencies at any given moment of which the shareholder himself knows nothing. That RET is solely owned by Mr. Nappo does not justify this Court creating new Connecticut state jurisprudence or reading into the tea leaves what Connecticut's appellate courts have not.

Here, although much of Mr. Nappo's testimony was not credible, he did credibly testify in this Court that, at the time of the divorce, (1) RET had a pending *ad valorem* suit in New York, seeking the return of overpaid taxes and (2) RET faced multimillion-dollar liabilities based on environmental issues at Mott Basin in New York. Therefore, at the time of the divorce, RET was undeniably insolvent and, both to the potential tax recovery and assault on environmental liabilities, were not subject to a known outcome.

It is of no moment that RET later prevailed in 2005 in the *ad valorem* suit, netting RET approximately $225,000.00, and had the potentially multimillion-dollar liability associated with Mott Basin overturned in court proceedings. At the time of the divorce, it was truthful and accurate that RET was insolvent. Because the financial affidavits required only that he list his ownership interests in businesses and their values, Mr. Nappo's listing of his 100% ownership of

18

RET at a value of $0 was not a false statement and, therefore, Mr. Nappo did not commit fraud, whether actual, constructive, or by nondisclosure, pertaining to the existence of the *ad valorem* suit.[13] *See Reville*, 312 Conn. at 441; *Nanos*, 97 Conn. at 532.

      b.     <u>Mr. Nappo Had No Duty to Disclose the Proceeds from the *Ad*</u>
               <u>*Valorem* Suit under Connecticut Law or the Divorce Decree</u>

The Plaintiff also argues that Mr. Nappo had a duty to disclose the proceeds from the *ad valorem* suit because it constituted "income" to him, which he was required to report under both the divorce decree and Connecticut law. The Court disagrees.

It is undisputed by the parties that Mr. Nappo was awarded all of his business interests, which included his 100% ownership of RET. The parties, however, disagree as to whether RET, which was administratively dissolved by the State of New York in 2002, was able to receive the proceeds from the *ad valorem* suit and reinvest those proceeds by lending the money to the Debtor in exchange for the Note, which in turn would determine whether the proceeds from the *ad valorem* suit were income to Mr. Nappo.

The parties have cited to N.Y. Bus. Corp. Law § 1005—albeit different parts—which states in full:

> (a) After dissolution:
> (1) The corporation shall carry on no business except for the purpose of winding up its affairs.
> (2) The corporation shall proceed to wind up its affairs, with power to fulfill or discharge its contracts, collect its assets, sell its assets for cash at public or private sale, discharge or pay its liabilities, and do all other acts appropriate to liquidate its business.
> (3) After paying or adequately providing for the payment of its liabilities:
> (A) The corporation, if authorized at a meeting of shareholders by a majority of the votes of all outstanding shares entitled to vote thereon may sell its remaining assets, or any part thereof, for shares, bonds or other securities or partly for cash and partly for shares, bonds or other securities, and distribute the same among the shareholders according to their respective rights. In the case of a sale under this subparagraph where the consideration is in whole or in part other than cash, any shareholder, entitled to vote thereon, who does

---

[13] The Court is not suggesting—nor could it—that the Plaintiff failed to be diligent in discovering the *ad valorem* suit, its proceeds, or the Note. *See Billington*, 220 Conn. at 218–19.

not vote for or consent in writing to such sale, shall, subject to and by complying with the provisions of section 623 (Procedure to enforce shareholder's right to receive payment for shares), have the right to receive payment for his shares. Section 909 (Sale, lease, exchange or other disposition of assets) is not applicable to a sale of assets under this paragraph.

(B) The corporation, whether or not it has made a sale under subparagraph (A), may distribute any remaining assets, in cash or in kind or partly each, among its shareholders according to their respective rights.

(b) When there are no shareholders, upon dissolution all subscriptions for shares shall be cancelled and all obligations of the corporation to issue shares or of the subscribers to pay their subscriptions shall terminate, except for such payments as may be required to enable the corporation to pay its liabilities.

(c) Upon the winding up of the affairs of the corporation, any assets distributable to a creditor or shareholder who is unknown or cannot be found, or who is under disability and for whom there is no legal representative, shall be paid to the state comptroller as abandoned property within six months from the date fixed for the payment of the final liquidating distribution, and be subject to the provisions of the abandoned property law.

The Plaintiff clings to subsection (a)(1), which forbids a corporation from carrying on business aside from winding up its affairs. The Trustee points to subsection (a)(2) and (a)(3)(A), which allows the corporation to wind up its affairs by selling its assets, including for bonds.

Upon a plain reading of the statute, the Trustee has the better reading. The Plaintiff would have this Court believe that RET was only authorized to wind up its affairs but then failed to cite to the *very same statute*, which expressly allows a dissolved corporation to invest in a bond, which according to N.Y. Bus. Corp. Law. § 102, includes notes. Simply put, despite dissolution, RET was authorized by New York statute to transfer money to the Debtor in exchange for the Note.[14]

---

[14] The Plaintiff cites to various New York cases in both of its briefs on New York corporate dissolution law (AP ECF Nos. 27 and 60). The cases cited in AP ECF No. 27 stating that owners of dissolved corporations are individually liable for the corporation's debts are irrelevant to whether Mr. Nappo received income. Likewise, the case cited in AP ECF No. 60 stating that a dissolved *Nevada* corporation could not enter new contracts tells the Court nothing about what a dissolved *New York* corporation may do. *In re Intelligent Bank Mgmt., Inc. (E. Coast. Fin. Corp.)*, 207 A.D.2d 760, 760–61, 616 N.Y.S.2d 618 (1st Dep't 1994). If anything, its statement on the powers of *de facto* corporations works against the Plaintiff's argument. *Id.* at 761.

And, although *Velez v. LoFranco*, 55 Misc. 3d 126(A), 55 N.Y.S.3d 695 (App. Term 1st Dep't 2017) does state that a dissolved corporation may not sue to recover loans made after dissolution, that opinion is not binding precedent, *see People v. Garcia*, 21 Misc. 3d 732, 739, 870 N.Y.S.2d 851 (Sup. Ct. 2008), and the cases *Velez* cites acknowledge that winding up a corporation's affairs may involve extending loans. *See Weiss v. Markel*, 110 A.D.3d

Whether RET's dissolution meant Mr. Nappo constructively received income is also answered by statute. Under N.Y. Bus. Corp. Law § 1006, "[t]he directors of a dissolved corporation shall not be deemed to be trustees of its assets; title to such assets shall not vest in them, but shall remain in the corporation until transferred by it in its corporate name." No evidence has been presented showing that RET transferred the Note to Mr. Nappo. As such, the proceeds of the *ad valorem* suit, which RET then invested into the Note, cannot be income to Mr. Nappo because title remains in RET. The Plaintiff has also failed to advance any legal authority under Connecticut, New York, or federal law that Mr. Nappo constructively received income from RET in its delayed wind-up. Therefore, Mr. Nappo did not fail to disclose income under either Connecticut law or the divorce decree and, thus, did not make a false statement pertaining to his income. Accordingly, Mr. Nappo's did not commit fraud pertaining to his income, whether actual, constructive, or by nondisclosure, by not disclosing the proceeds of the *ad valorem* suit or the Note.[15] *See Reville*, 312 Conn. at 441; *Nanos*, 97 Conn. at 532.

### 2.   The Debtor Was Not Unjustly Enriched

The Plaintiff also argues that the Debtor was unjustly enriched because it benefited on account of the Property, it has not paid the Plaintiff any sum for that benefit, and such ownership has been to her detriment. The Trustee argues that the Debtor has no relationship or duties to the Plaintiff and, therefore, owes her nothing at law or equity. The Court agrees with the Trustee.

---

869, 871, 973 N.Y.S.2d 318 (2d Dep't 2013). Even still, in those cases the dissolved corporation was the plaintiff and failed to meet its burden of showing compliance with N.Y. Bus. Corp. Law § 1005. Here, the dissolved corporation is not even a party, and the Plaintiff has failed in *her* burden to show that the loan from RET to the Debtor was not made in the course of RET's wind-up.

[15] The Court's holding does not mean that the assets of RET can *never* become income to Mr. Nappo, merely that they have not been to date. Whether Mr. Nappo *will* receive income from RET at some point in the future is not before this Court. Also, whether his interest in RET under the divorce decree might justify his retention of such monies once distributed as a return of capital is not before this Court.

First, in order to prove that the Debtor was unjustly enriched, the Plaintiff must prove that Mr. Nappo failed to disclose the *ad valorem* suit and its proceeds. The Court has already determined that Mr. Nappo had no duty to disclose those things. This alone is fatal to the Plaintiff's unjust enrichment claim as pleaded. Nonetheless, the Court also determines that (1) any failure to disclose was not to the Plaintiff's detriment, (2) the Plaintiff has failed to prove that Ms. Nappo conspired with or aided and abetted Mr. Nappo in the alleged failure to disclose, and (3) even if there was detriment to the Plaintiff, RET received value via the Note, which is a filed claim against the Chapter 7 bankruptcy estate (Proof of Claim 3-1).

> a.    Even if William Nappo Had a Duty to Disclose, the Failure to Do So Was Not to the Plaintiff's Detriment

The Plaintiff has alleged that she was harmed by the nondisclosure of the *ad valorem* suit and its proceeds. Such is simply not credible. The Court has already found that, at the time of the dissolution, RET was patently insolvent. Even if Mr. Nappo had provided a full accounting of RET's books and pending and potential causes of action, its value would still have been $0 because, at the time, its liabilities outweighed its assets. In the divorce decree, the trial judge believed that Mr. Nappo was hiding assets and *still* ordered that he retain all of his business entities. As such, the Court finds that even if Mr. Nappo had disclosed the *ad valorem* suit then-pending in New York, the state court still would have ordered Mr. Nappo to retain RET because he accurately listed its value at $0.

Additionally, the Court finds that the failure to pay the Plaintiff is nondetrimental because the Plaintiff may be entitled to payment from the Note. The Note, which is the subject of RET's Proof of Claim 3-1, has not been challenged and is currently slated to receive a dividend as an unsecured prepetition claim. Although the Court makes no finding that the Plaintiff is entitled to any portion of the Note—nor could it because Mr. Nappo and RET are not parties—the Plaintiff

22

may yet prove her case against Mr. Nappo and RET in state court. Accordingly, any allegation of detriment to the Plaintiff is speculative at this point in time and cannot sustain a claim of unjust enrichment. *See Town of New Hartford*, 291 Conn. at 451–52.

> b.    The Plaintiff Has Failed to Prove that Karen Nappo Conspired with or Aided and Abetted William Nappo

The Plaintiff claims that Ms. Nappo, while aware of Mr. Nappo's duty to disclose, conspired with and aided and abetted him in violating that duty. The Trustee argues that the Plaintiff has failed to prove the elements of either. Even assuming that Mr. Nappo violated his duty to disclose, the Court agrees with the Trustee.

"The [elements] of a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff."[16] *Macomber v. Travelers Prop. & Cas. Corp.*, 277 Conn. 617, 635–36, 894 A.2d 240 (2006) (citation and internal quotation marks omitted). Civil aiding and abetting in Connecticut "includes the following elements: (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must

---

[16] "There is, however, no independent claim of civil conspiracy. Rather, [t]he action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself. . . . Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." *Macomber v. Travelers Prop. & Cas. Corp.*, 277 Conn. 617, 636, 894 A.2d 240 (2006) (citation, emphasis, and internal quotation marks omitted). For purposes of being comprehensive, the Court has assumed that the final three elements of this test have been met by Mr. Nappo. The Court has, of course, held that the second element has not been met through Mr. Nappo's actions, which would also mean that Ms. Nappo could not have committed civil conspiracy in this case either because the claim cannot stand alone or because the Plaintiff has failed to prove an unlawful act or a lawful act by unlawful means.

knowingly and substantially assist the principal violation[.]"[17] *Efthimiou v. Smith*, 268 Conn. 499, 505, 846 A.2d 222 (2004) (citation and internal quotation marks omitted).

Assuming that the Plaintiff has met her burden on proving that Mr. Nappo had a duty to disclose the *ad valorem* suit, its proceeds, and the Note, the Plaintiff has failed to prove that Ms. Nappo either combined with Mr. Nappo to do so or that Ms. Nappo was aware of and knowingly and substantially assisted Mr. Nappo in wrongdoing. Aside from the undisputed facts that Ms. Nappo was Mr. Nappo's girlfriend at the time of the corporate dissolution and was the sole member and owner of the Debtor, the Plaintiff presented no evidence that Ms. Nappo had any role in Mr. Nappo's nondisclosure of the *ad valorem* suit or its proceeds.

Furthermore, Ms. Nappo credibly[18] testified to having her own money and the state court found that she has largely been supporting Mr. Nappo. Ms. Nappo credibly testified to the circumstances surrounding her purchase of the Property, namely, that she had ended her career at Aetna and was looking to invest in real estate, a field her father had engaged in for many years. It is certainly true that, as part of the purchase price, the Debtor used money obtained from RET at Mr. Nappo's direction, but this circumstance does not lead this Court to conclude that Ms. Nappo conspired with or aided and abetted Mr. Nappo in unlawful nondisclosure. *See Macomber*, 277 Conn. at 635–36; *Efthimiou*, 268 Conn. at 505.

---

[17] Civil aiding and abetting also cannot stand absent a valid underlying cause of action. *Efthimiou v. Smith*, 268 Conn. 499, 505, 846 A.2d 222 (2004). As with civil conspiracy, Ms. Nappo cannot be liable for civil aiding and abetting absent a wrong on Mr. Nappo's part. *See* note 16 of this Memorandum.

[18] The negative effect of the Plaintiff's elicitation of Ms. Nappo's alleged nonreporting of moneys received from her sister on her income tax returns is, at best, *de minimis*.

c.      Even if William Nappo Had a Duty to Disclose and the Failure to
Do So Was Not Harmless, RET Capital Corp. Received Value in
Exchange for the Transfer of Funds to the Debtor

Even assuming that Mr. Nappo had a duty to disclose the *ad valorem* suit and its

proceeds, failed to do so, and such failure was to the Plaintiff's detriment, the Court still does not

find unjust enrichment because the Debtor issued the Note to RET.

As noted above, unjust enrichment requires the Court to find "(1) that the [Debtor] w[as]

benefited, (2) that the [Debtor] unjustly did not pay the [Plaintiff] for the benefits, and (3) that

the failure of payment was to the [Plaintiff's] detriment." *Town of New Hartford*, 291 Conn. at

451–52 (citation and internal quotation marks omitted). "[T]he measure of damages[19] in an

unjust enrichment case ordinarily is not the loss to the plaintiff but the benefit to the defendant."

*Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 285, 649 A.2d

518 (1994) (citation omitted; footnote added).

The Court notes that, at most, $5,000.00 was paid on the Note and the interest rate was

very favorable to the Debtor. These circumstances could certainly be considered benefits, albeit

small, because RET's proof of claim under the Note is slated to be paid a dividend. The Plaintiff,

however, also argues that Mr. Nappo and Ms. Nappo have benefited from the rents received from

the Property. Such an argument ignores that the Debtor has incurred risks and costs in

maintaining the Property and—more importantly—Mr. Nappo and Ms. Nappo are not the

Debtor. Although the Plaintiff has argued that Mr. Nappo maintains dominion and control over

the Debtor, she failed to produce sufficient evidence to prove that argument. At best, the Plaintiff

has proved that Mr. Nappo has occasionally helped Ms. Nappo with her operation of the Debtor

and that Ms. Nappo has used her income from the Debtor to support Mr. Nappo. That Ms. Nappo

---

[19] "Damages" in this sentence more appropriately means "restitution." *Schirmer v. Souza*, 126 Conn. App.
759, 771 n.5, 12 A.3d 1048 (2011).

supports Mr. Nappo is not controversial in any way because: (1) they are married and (2) the Superior Court previously found that Ms. Nappo was supporting Mr. Nappo in a manner typical of their relationship and adjusted his alimony to include funds received from her that she, in turn, derived from her ownership of the Debtor.

In any event, the benefits the Debtor has derived certainly do not equal the full value of the Property. The money received from RET constituted only about a third of the purchase price, as the Debtor took out two mortgages to finance it. Additionally, funds have been expended over the thirteen years the Debtor controlled the Property for maintenance, improvements, and operations.

Considering that the Debtor did not merely take the money but issued a Note to RET, the Court finds that any failure to pay the Plaintiff for these benefits was not unjust because the Debtor gave value for the funds it received. *See Town of New Hartford*, 291 Conn. at 451–52. Even though that value (1) has not been paid back, (2) came with a favorable interest rate, and (3) will not see a full recovery because it is an unsecured debt, the Court will not use the lens of hindsight to retroactively find unjust behavior in what may have been a bad investment.[20]

*** 

In short, the Plaintiff has failed to prove by a preponderance of the evidence that: (1) Mr. Nappo committed fraud, whether actual, constructive, or by nondisclosure; (2) Ms. Nappo conspired with or aided and abetted Mr. Nappo; (3) the Debtor unjustly failed to pay the Plaintiff; or (4) such failure to pay was detrimental to the Plaintiff. Each of these findings, on its

---

[20] As the Plaintiff has failed to prove Mr. Nappo's control over the Debtor such to make it his alter ego, the Court finds that, even if the proceeds of the *ad valorem* suit were somehow income he needed to disclose, the Plaintiff's claim still fails because the Debtor's failure to pay the Plaintiff was not unjust. As noted above, the Plaintiff may yet recover from Mr. Nappo or RET, so any claim of unjust nonpayment is merely speculative and certainly does not attach to the Debtor.

own, is fatal to the Plaintiff's constructive trust claim. Therefore, the Court finds that a constructive trust is not warranted under Connecticut law. *See Town of New Hartford*, 291 Conn. at 466; *Wendell Corp. Tr.*, 239 Conn. at 113–14; *Hieble*, 164 Conn. at 63; *Gabel*, 69 Conn. App. at 295.

        3.    <u>Even If the Debtor Was Unjustly Enriched and Would Be Entitled to a Constructive Trust in a Connecticut State Court Proceeding, a Constructive Trust Is Not Warranted under the Equities of this Bankruptcy Case</u>

The Trustee also argues that, notwithstanding Connecticut law, a constructive trust should only be imposed in a bankruptcy case in compelling circumstances. The Court agrees and finds that, assuming *arguendo* that the Plaintiff was entitled to a constructive trust under Connecticut law, it would still not impose a constructive trust under the facts and circumstances of this case.

As noted by the Second Circuit:

The chief purposes of the bankruptcy laws are to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period, . . . to place the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors, . . . and to protect the creditors from one another . . . . But by creating a separate allocation mechanism outside the scope of the bankruptcy system, the constructive trust doctrine can wreak . . . havoc with the priority system ordained by the Bankruptcy Code.

In this Circuit, we have rejected the notion that bankruptcy law trumps state constructive trust law . . . . While we do not depart from [that] holding . . . we note that our obligation to apply . . . constructive trust law does not diminish the need to act very cautiously to minimize conflict with the goals of the Bankruptcy Code. . . . In light of the fact that these goals can be compromised by the imposition of a constructive trust, bankruptcy courts are generally reluctant to impose constructive trusts without a substantial reason to do so. . . . Bankruptcy courts in this Circuit are no exception. . . .

Although we do not disturb the general rule that constructive trusts must be determined under state law, we believe it important to carefully note the difference between constructive trust claims arising in bankruptcy as opposed to those that do not, as the equities of bankruptcy are not the equities of the common law. . . . In the typical non-bankruptcy case, a constructive trust claim is intended to prevent one who failed to meet

an obligation or committed fraud or other misconduct from becoming unjustly enriched. The Chapter 7 context, however, is fundamentally different. The trustee marshals the assets of the estate under judicial supervision, for distribution according to federal law, under circumstances in which unsecured creditors receive fair but not full returns.

*Superintendent of Ins. v. Ochs (In re First Cent. Fin. Corp.)*, 377 F.3d 209, 217–18 (2d Cir. 2004) (citations and internal quotation marks omitted).

The Second Circuit has also explained that "[t]he effect of a constructive trust in bankruptcy is to take the property out of the debtor's estate and to place the constructive trust claimant ahead of other creditors with respect to the trust res. . . . It is therefore not the debtor who generally bears the burden of a constructive trust in bankruptcy, but the debtor's general creditors. This type of privileging of one unsecured claim over another clearly thwarts the principle of ratable distribution underlying the Bankruptcy Code. As a consequence bankruptcy courts have been reluctant, absent a compelling reason, to impose a constructive trust on the property in the estate." *Cadle Co. v. Mangan (In re Flanagan)*, 503 F.3d 171, 182 (2d Cir. 2007) (citations omitted).

"Recognizing different equities in different contexts is not an impermissible transformation of the substantive law. It is simply a recognition that an equitable remedy is more or less appropriate when different interests are in play. Context-sensitivity is part and parcel of equity under [state] law as much as it is under bankruptcy law." *Ades & Berg Grp. Inv'rs v. Breeden (In re Ades & Berg Grp. Inv'rs)*, 550 F.3d 240, 245 (2d Cir. 2008).

Much of the Plaintiff's case was to show how Mr. Nappo and Ms. Nappo were personally benefitted by the Property. Even extending whatever benefits these two individuals may have received to the Debtor, the Plaintiff's argument is still unavailing under the equities of bankruptcy. The Plaintiff has failed to prove—nor has she even pleaded—that the estate or the unsecured creditors have been unjustly enriched by the estate's continued ownership of the

28

Property.[21] Such a failure is fatal to the Plaintiff's claim under bankruptcy law. *See In re Flanagan*, 503 F.3d at 182. And while the estate "may have been enriched, it was not unjustly enriched[.]" *In re First Cent. Fin. Corp.*, 377 F.3d at 218. "[R]etention by the bankruptcy estate of assets that, absent bankruptcy, would go to a particular creditor is not inherently unjust." *In re Ades & Berg Grp. Inv'rs*, 550 F.3d at 245 (citation omitted).

Perhaps most importantly, in the divorce proceedings, the only asset relevant here that the Plaintiff may have been entitled to was RET. Even if she was made a part owner of RET as part of the marital dissolution, that fact alone would not have made her an owner of the Property. RET received proceeds from the successful prosecution of the *ad valorem* suit and loaned those funds to the Debtor in exchange for the Note. Such a relationship would have made the Plaintiff part-owner of a creditor of the Debtor, not the owner of the Property. These facts, even if established, would not warrant the imposition of a constructive trust in the context of a bankruptcy proceeding. *See In re Flanagan*, 503 F.3d at 180–82. In spite of the undisputed path the funds took, which would alleviate any traceability issues, the Plaintiff is too many degrees removed from the Property to make a valid claim for a constructive trust on it.

---

[21] As part of her examination of the Trustee, the Plaintiff was able to show that, aside from the claims of the Plaintiff, Ms. Nappo, and RET, some of the unsecured claims may be of questionable merit. The Trustee, however, credibly testified that any examination of the unsecured claims was, at this point, preliminary and each would receive more scrutiny once the Chapter 7 bankruptcy estate had funds to perform a more rigorous examination. The point of the Plaintiff's questions, though, was to show that, if her constructive trust claim is meritorious, which would also defeat RET's claim, there may not be a significant pool of unsecured creditors, exclusive of insiders, to consider.

The Second Circuit cases cited in this section make no exception for privileging one unsecured claim where the others may be insignificant by comparison. At this point in time, there have been several claims filed in this case, claims that are presumptively valid until challenged. *See* 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). As those claims have not been challenged, the Court will not speculate as to their validity so as to weigh the equities more favorably towards the Plaintiff and burden these presumptively innocent creditors, who would also include administrative claimants.

C.     Because Claim 6-1 Is Entirely Premised on the Imposition of a Constructive Trust, It Must Be Disallowed

As noted above, because the Trustee "produce[d] sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden revert[ed] to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re Vanegas*, 290 B.R. at 193 (citations omitted). The Court, having found that a constructive trust is unwarranted, finds that the Plaintiff has failed to prove the validity of Claim 6-1, which is entirely premised on her constructive trust claim. *See* 11 U.S.C. § 502(b)(1). Because Claim 6-1 fails in its proof, the Court must sustain the Trustee's Objection and disallow the claim.

V.     CONCLUSION

The Court is not unsympathetic to the Plaintiff. It is apparent from the long history between her and Mr. Nappo that she feels mistreated, misled, and scorned. Her anger may even be well-founded, and she may yet have remedies against Mr. Nappo, Ms. Nappo, or RET, but they are not parties to these matters. The only defendants are the Debtor and the Trustee, and the Plaintiff has not proven that she is entitled to what she claims against this Debtor (or the Trustee) in *this* case.

For the absence of doubt: to the extent an argument has not been expressly addressed in this Memorandum, the Court states that it has considered all of the evidence and all of the Plaintiff's arguments. Any of the Plaintiff's arguments not discussed have been considered and determined to be immaterial or without merit.

The Plaintiff has not met her burden to warrant the imposition of a constructive trust on the Property and judgment shall enter for the Defendants in the Adversary Proceeding. Accordingly, the Objection to Claim 6-1 is sustained, and the claim is disallowed.

In the interests of justice and fairness, the Court waives the 14-day stay of its decision under Fed. R. Bankr. P. 7062. The Plaintiff's claims, having been fully heard, have failed upon multiple grounds. Delays only stand to chill the pending sale, increase its costs, or risk failure, and act as a deterrence to a bona fide buyer. Without a bond or compelling grounds to stay this judgment, an automatic stay is unjustified and inequitable.

This is a final decision subject to traditional rights of appeal. Subject to Fed. R. Bankr. P. 8002, a Notice of Appeal must be filed within fourteen (14) days after entry of judgment. In this Adversary Proceeding, a separate Judgment will enter simultaneously with the entry of this Memorandum.

IT IS SO ORDERED at Hartford, Connecticut this 12th day of March 2019.

*James J. Tancredi*
*United States Bankruptcy Judge*
*District of Connecticut*